Argued July 21, 1978, affirmed March 5, 1979

1000 FRIENDS OF OREGON, et al, *Petitioners,*
*v.*
LAND CONSERVATION AND DEVELOPMENT
COMMISSION, et al, *Respondents,*
(No. 76-004, CA 10505)
(consolidated cases)
(for argument only)
1000 FRIENDS OF OREGON, et al, *Petitioners,*
*v.*
LAND CONSERVATION AND DEVELOPMENT
COMMISSION, et al, *Respondents,*
(No. 77-004, CA 10242)
591 P2d 387

Robert E. Stacey, Jr., Portland, argued the cause and filed the briefs for petitioners.

Michael D. Reynolds, Assistant Attorney General, Salem, argued the cause for respondent Land Conservation and Development Commission and Department of Land Conservation and Development, Wesley J. Kvarsten, Director. With him on the briefs were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Wade P. Bettis, Canby, argued the cause for respondent City of Wilsonville and Wilsonville Chamber of Commerce. With him on the brief were R. Roger Reif and Bettis and Reif, Canby.

E. Andrew Jordan, Jr., Portland, argued the cause and filed the brief for respondent Columbia Region Association of Governments.

Terry D. Morgan, Portland, argued the cause and filed the brief for respondent Land Development and Housing Resources Corporation.

John Wiley Gould, Portland, waived appearance for respondent Home Builders Association of Metropolitan Portland, Inc.

Michael B. Huston, James M. Mattis and Edwin Caleb, Salem, filed a brief amicus curiae on behalf of the League of Oregon Cities.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

TANZER, J.

## TANZER, J.

Petitioners initiated these two contested case proceedings (consolidated for review) to challenge portions of two orders of the Land Conservation and Development Commission (LCDC) which express a policy that all land within lawfully established city boundaries shall be classified as urban or urbanizable and therefore exempt from the agricultural lands goal (Goal 3) and certain portions of the urbanization goal (Goal 14) relating to the establishment of urban growth boundaries. Petitioners argue that the policy is unlawful because it conflicts with statewide planning Goals 3 and 14, which require that the timing and location of urban development be based on certain objective planning criteria which are not necessarily reflected in the boundaries of cities. We do not reach petitioners' contentions for reasons which lie in the fundamental nature of LCDC orders and of judicial review of them.

The review authority of LCDC under ORS 197.310 is to take certain actions of legal consequence, *i.e.,* to uphold or invalidate ordinances and other acts of local government. As we stated in *Board of Comm. of Clackamas County v. LCDC,* 35 Or App 725, 731, 582 P2d 59 (1978):

"\* \* \* LCDC's authority lies in its power to 're-view,' *i.e.,* to declare the validity or invalidity of an ordinance, on the record before it [and to enforce its orders]."

Review of such an order may be obtained by any party before the LCDC who is "adversely affected or aggrieved by the order \* \* \*." ORS 197.310(5).

To summarize the procedural posture of the cases before us, the legal acts ordered by LCDC were exactly what petitioners desired, *i.e.,* the invalidation of the challenged local government decisions. Petitioners do not seek review because they are adversely affected or aggrieved by orders, that is by the legal acts, of LCDC or any of the findings, conclusions or rules that

[57]

support those acts—after all, petitioners won before LCDC. Rather, petitioners seek review because they are dissatisfied with additional provisions in the orders which are in the nature of advice to the local governments as to how they may proceed in taking future action. It is the advice which accompanies the orders, not the legal acts accomplished by the orders, which petitioners seek to have reviewed.

■ An advisory statement of principle is not made reviewable in the abstract simply by appending it to an order. It will become subject to review if a unit of local government takes cognizable legal action in accordance with that advice and if LCDC issues an order on review based upon it. ORS 183.482(8). Alternatively, if an advisory statement of principle is promulgated in the form of a rule, it may be reviewed in that form. ORS 183.400.

Upon judicial review, the court may affirm, reverse or remand the order. ORS 183.482(8). We examine underlying findings, reasoning and conclusions to determine if a legal act based upon them is correct. On the other hand, we have no cause to do so if there is no challenge to the act itself because no purpose is served by remanding the case to require the agency to retake the same action for a different reason. Here, declarations are challenged, but the acts which form the basis of the orders are not. Petitioners would have us reverse the cases and remand them to LCDC for identical orders with different accompanying language.

■ In 1000 Friends v. LCDC/Wilsonville (No. 10505), petitioners brought a contested case proceeding under ORS 197.300(1)(d)[1] to obtain review by LCDC of a City

---

[1] ORS 197.300(1)(d) provides:

"(1) In the manner provided in ORS 197.305 to 197.315, the commission shall review upon:
"* * * * *
"(d) Petition by any person or group of persons whose interests are substantially affected, a comprehensive plan provision or any zoning, subdivision or other ordinance or regulation alleged to be in violation of statewide planning goals approved under ORS 197.240."

of Wilsonville ordinance establishing an urban growth boundary for the city. LCDC found that the urban growth boundary had been fashioned without adequate consideration of the seven criteria in Goal 14 for establishment and revision of urban growth boundaries. The ordinance was therefore invalidated. LCDC's order provided:

> "For the foregoing reasons, the Commission declares that Ordinance No. 58 does not establish a valid Goal 14 urban growth boundary for Wilsonville, and that lands outside the corporate limits of the City of Wilsonville but within the Ordinance No. 58 boundary remain subject to Goal 3."

The first clause invalidates the urban growth boundary and petitioners do not challenge that act. The second clause declares that Goal 3 applies outside the city. It is that declaration which petitioners challenge on review because it impliedly declares that land inside the city is not subject to Goal 3. The order contains no legal act which is based on that implication. Petitioners' challenge is to the implication in the abstract. It may be raised if and when a party is aggrieved by a future act of LCDC in the form of an order reviewing a cognizable decision of a unit of local government which regulates land within the city without regard to Goal 3, but the issue is not presented in this case.

■ In 1000 Friends v. LCDC/CRAG (No. 10242), petitioners challenged the Land Use Framework Element of the Columbia Region Association of Governments (CRAG) Regional Plan on the ground that the urban growth boundaries it established did not comply with Goal 14. On December 19, 1977, LCDC issued its interlocutory order invalidating the urban growth boundaries on the ground that they were not properly enacted and declaring that Goal 3 would therefore remain applicable to all agricultural lands in the CRAG region. The order went on to invite CRAG to submit for LCDC approval immediate growth boundaries, within which Goal 3 would not apply, pending

[59]

establishment of urban growth boundaries in accordance with Goal 14. The order stated that to be eligible for LCDC approval, CRAG's immediate growth boundaries would have to satisfy any of four criteria, one of which allowed the immediate growth boundary to include all lands within the corporate limits of the city. On February 16, 1978, petitioner filed a petition for judicial review of the interlocutory order challenging that criterion as contrary to LCDC goals and therefore unlawful.

As in the Wilsonville order, petitioner does not challenge the legal act embodied in the order; the act was as sought by petitioner and petitioner was not aggrieved by it. Rather, petitioner challenges only LCDC's advice to CRAG as to its anticipated policy for the future review of immediate growth boundaries when submitted. Again, this advice did not constitute a reviewable legal act and was not relied on as the basis for the order.[2]

---

[2] On March 10, 1978, CRAG submitted and LCDC approved an immediate urban growth boundary which exempted all lands within it from Goal 3, thus presenting the identical issue that petitioners seek to raise here. For reasons which are not apparent to us, petitioners did not petition for review of that final order. Because of our disposition on review of the interlocutory order, we do not determine whether the effect of the final order was to render the interlocutory order moot.

Also, the policy of exclusion of lands within city boundaries from the application of Goal 3 was adopted by LCDC as a rule in February, 1978. OAR 660-01-395. The final order of March 10 does not purport to rely on the rule. Petitioners initiated a proceeding for judicial review of the rule, but it was dismissed on petitioners' motion because petitioners believed that ORS 183.400(1) prohibits a separate proceeding to determine the validity of an administrative rule when the same petitioner is also seeking review of agency orders in which this court may determine the validity of the rule.

The rule is not subject to review in these cases because the rule was not applied or even adopted until after LCDC issued the orders which petitioner challenges. ORS 183.400(1) authorizes judicial review of a rule in a contested case proceeding only when the rule was relied upon as a ground for the contested case order on review. *See* ORS 183.400(2); *cf.* ORS 183.482(8)(c). Because the rule played no part in the contested case proceedings which resulted in the orders which petitioner challenges, there is no basis for judicial review of the rule in this case.

We do not intend by this holding to discourage LCDC or any other agency from assisting people to anticipate future action and thus to avoid wheel-spinning in a policy vacuum. We note that the rulemaking process accomplishes that purpose with greater procedural protection, publication and, because prompt judicial review is available, stability for the policy. We hold only that there is no judicial review of such statements in the abstract and we note that those who act in reliance on such statements do so knowing that the agency may change its mind or that the policy may be stricken on judicial review. Without some legal act based on the policy and properly brought before us on review, we have no authority to reach the legal questions about the validity of the policy which petitioners seek to challenge.

Affirmed.